IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISITRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DERRICK DIRCKS, | ) |
|     Plaintiff, | ) ) ) |
|     -vs- | ) ) No: ) |
| THE LAKE COUNTY SHERIFF'S OFFICE, A municipal corporation, | ) ) ) |
|     Defendant. | ) ) |

## COMPLAINT AT LAW

NOW COMES Plaintiff, DERRICK DIRCKS, by and through his attorneys, ROBERT MONTGOMERY and complaining of Defendant, THE LAKE COUNTY SHERIFF'S OFFICE, states as follows:

### JURISDICTION AND VENUE

1. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq. and the 14th Amendment to the United States Constitution;

2. Venue is proper in this District under 28 U.S.C § 1391(b) as the Defendant does business and the events took place in this judicial district;

### COUNT II – 42 U.S.C § 1983

### CODE OF SILENCE

3. At all times herein referred, Defendant, LAKE COUNTY SHERIFF's OFFICE (hereinafter referred to as the "Defendant," was and still is a municipal corporation organized and existing under the laws of the State of Indiana;

4. Prior to July 10, 2016, the Defendant employed Officer Guy Mikulich as a duly appointed police officer with the rank of Lieutenant who engaged in the conduct complained of in the course and scope of his employment;

5. On July 9, 2016 and July 10, 2016, Officer Mikulich was assigned to work security at the Gary Air and Water Show;

6. While on duty on July 10, 2016, Officer Mikulich attended a house party with Lake County Sheriff Commander Sharon Bennett at a home located 7321 Oak Avenue in Gary, Indiana, near Miller Beach where Officer Mikulich drank to the point of intoxication;

7. When the Air Show ended, Officer Mikulich drove his company issued unmarked police vehicle while intoxicated to assist with traffic control of motorists leaving the Air and Water Show;

8. While intoxicated, Officer Mikulich was proceeding westbound on Oak Avenue at or near its intersection with Pike Street, in the City of Gary, County of Lake, State of Indiana, when he veered off the roadway and struck a parked vehicle and Plaintiff, Derrick Dircks;

9. Following the collision, Officer Mikulich fled the scene and reports of 911 calls came over the Spillman Radio Dispatch System of a hit and run accident involving an unmarked police vehicle with a uniformed police officer identified as behind the wheel;

10. After hearing the dispatch and suspecting the offender was Officer Mikulich, Officers of the Lake County Sheriff's Office began communicating with one another and with Officer Mikulich over cellular phone to avoid documenting their conversations over the radio dispatch with the intent of coordinating a conspiracy to minimize, conceal, and/or

destroy evidence of his intoxication in order to shield him from criminal prosecution and him and the Office from civil liability;

11. Officer Mikulich was later apprehended by an officer from the Gary Police Office who upon curbing Officer Mikulich received a call on her cellular phone (to avoid documentation of the conversation over the radio) from Commander Bennett requesting she be extended a "professional courtesy" suggesting that Officer Mikulich be treated differently than any other suspect involved in a hit a run motor vehicle accident;

12. Notwithstanding the request for "professional courtesy," the Gary Police Officer proceeded with her investigation, however, Commander Bennett and other officers from the Lake County Sheriff's Office descended upon the scene within minutes to implement their conspiracy and to impede the investigation by ordering Officer Mikulich to refrain from speaking to the Gary Police Officer and sequestering him in Commander Bennett's vehicle to shield him from further observation, investigation, or inquiry;

13. Commander Bennett then commandeered the investigation from the Gary Police Office by informing the investigating Gary Police Officer that the Lake County Sheriff's Office would be heading the investigation since it involves a Lake County Police Officer in furtherance of the Lake County Sheriff Office's conspiracy to control the investigation in order to minimize, conceal, and / or destroy evidence of Officer Mikulich's intoxication;

14. Although Commander Bennett assured the Gary Police Officer the investigation would be "By the Book," the Lake County Sheriff's Officers in furtherance of their conspiracy provided Officer Mikulich several bottles of water and edibles in violation of DUI investigations protocol in an attempt to minimize, conceal and / or destroy evidence of Officer Mikulich's intoxication;

15. The Lake County Sheriff's Office in furtherance of their conspiracy violated the chain of custody in violation of DUI investigations protocol by allowing Officer Mikulich out of their sight to urinate and/or vomit in an attempt to minimize, conceal and / or destroy evidence of his intoxication;

16. Lake County Sheriff's Officer Verbich administered a Portable Breathalyzer Test ("PBT") in the back of Commander's Bennett's vehicle on at least 2 occasions but then lied to Gary Police Officers about the results claiming Officer Mikulich refused testing in furtherance of their conspiracy to minimize, conceal and /or destroy evidence of his intoxication;

17. The purpose of administering the PBT was not intended to properly investigate Officer Mikulich's crimes but to privately assess the level of his intoxication to gauge the lengths that would be necessary to cover it up which is why Officer Verbich in furtherance of their conspiracy lied about the test results to the Gary Police Officers on scene and failed to document them;

18. Disturbed by the attempted conspiracy to cover up Officer Mikulich's intoxication perpetrated by the Lake County Sheriff's Officers, the Gary Police Officer reported her observations to her superior officer who requested that the Indiana State Police investigate as it was apparent the Lake County Sheriff's Office could not be trusted to investigate its own officer;

19. In furtherance of their conspiracy, Officer Verbich attempted to obstruct justice by lying again to Indiana State Police investigators about whether Officer Mikulich was administered a PBT by again claiming he offered the test but Officer Mikulich refused it. It was only after Officer Verbich was made aware that officers from the Gary Police

Office witnessed him administer the test that he reluctantly admitted that Officer Mikulich was administered an off the record and undocumented PBT;

20. Given that Officer Mikulich's blood draw pursuant to a warrant obtained several hours later revealed a blood alcohol concentration of .13, it is probable that Officer Verbich's claim that his BAC was only .17 several hours earlier is unlikely and Officer Verbich was still lying in furtherance of their conspiracy to minimize, conceal, and destroy evidence as to the true level of Officer Mikulich's intoxication;

21. On June 6th and June 7th, 2017, a Merit Board Hearing was conducted related to conduct of Officer Mikulich during which time Officer Verbich testified under oath in front of the Lake County Chief of Police, other Lake County Police Officers, and the Lake County Merit Board that he lied to Indiana State Police investigators when he initially told them he never administered a PBT to Officer Mikulich yet he has not been investigated or meaningfully reprimanded or disciplined for lying to police investigators;

22. The conduct of Commander Bennett and Officer Verbich were documented in the Indiana State Police Arrest Report yet neither has been investigated or meaningfully reprimanded or disciplined;

23. The attempt by the Lake County Sheriff's Office to cover up, minimize, conceal, and or destroy evidence of Officer Mikulich's intoxication and the failure on its part to investigate or meaningfully reprimand or discipline the officers involved is endemic in the culture of the Lake County Sheriff's Office and is evidence of *defacto* policies, practices, and customs commonly referred as a "Code of Silence" or an implicit understanding between and among members of the Lake County Sheriff's Office resulting in a refusal or failure to report instances of misconduct of which they are

aware, including but not limited to, violations related to intoxication and other criminal acts, despite their obligation to do so as sworn peace officers. This includes police officers who remain silent or give false or misleading information during officer investigations into allegations of fellow officer related misconduct (on or off duty) in order to protect themselves or their fellow officers and Office from discipline, criminal prosecution and / or civil liability;

24. Prior to July 10, 2016, instances of misconduct involving other officers in the Office were handled internally without investigation or meaningful repercussion or reprimand including but not limited to several instances of alcohol related offenses;

25. Prior to July 10, 2016, instances of misconduct involving other officers in the Office where consumption of alcohol should have strongly been suspected were not investigated by the Office as alcohol related offenses and standard tests to detect alcohol intoxication were never administered to shield officers from criminal prosecution and / or meaningful repercussions, reprimand, or discipline;

26. Prior to July 10, 2016, instances of officers involved in hit and run accidents both involving stationary objects and pedestrians were handled without meaningful repercussions, reprimand, or discipline;

27. Prior to July 10, 2016, instances of officers who lied to law enforcement investigators were handled without meaningful repercussions, reprimand, or discipline;

28. Prior to July 10, 2016, instances involving at least one officer accused of raping a woman while on duty was handled without meaningful repercussions, reprimand, or discipline. Despite the Officer admitting to the sexual encounter while on duty, he is still

employed on the Lake County Sheriff's Office despite a substantial civil judgment where a jury found more likely than not that he sexually assaulted the complainant;

29. Prior to July 10, 2016, instances involving an officer who pepper sprayed prison inmates with no legitimate law enforcement purpose other than to satiate his own sadistic tendencies were handled without meaningful repercussions, reprimand, or discipline;

30. Prior to July 10, 2016, instances of misconduct involving other officers who were pulled over for suspicion of driving under the influence by other investigating agencies were extended "professional courtesy" and officers from Lake County Sheriff's Office were dispatched to the scene to drive the offending officer and his vehicle home without documentation of the incident, investigation, meaningful repercussion, reprimand, or discipline;

31. Prior to July 10, 2016, instances of misconduct involving other officers who became intoxicated and were involved in disturbances in public places while off duty but who drove company issued vehicles to the location where they became intoxicated and disruptive were handled with the officer and his vehicle being driven home without investigation or meaningful repercussion, reprimand, or discipline;

32. Upon information and belief, the Lake County Sheriff's Office has never documented an instance where a Lake County police officer in the ordinary course of patrol has pulled over another fellow Lake County police officer and has documented suspicion of driving under the influence of alcohol;

33. Upon information and belief, the only time a Lake County Sheriff's officer has ever been investigated by the Lake County Sheriff's Office for an alcohol related offense was in one of the following instances:

a. When another law enforcement agency apprehended the officer and refused to extend a "professional courtesy", properly investigated the incident, and arrested or cited the offending officer;

b. When the offending officer was involved in a traffic accident involving physical damage to another motorist's vehicle and that motorist witnessed the incident; and / or,

c. When negative publicity that could not be swept under the rug arose from the incident;

34. The failure of the Lake County Sheriff's Office to investigate or meaningfully reprimand or discipline its officers has created *de facto* policies, practices, and/or customs of concealing and suppressing officer misconduct (both on and off duty) including but not limited:

   (a) the failure to enforce regulations related to intoxication (both on and off duty);

   (b) the failure to enforce regulations related to operating a motor vehicle while intoxicated;

   (c) the failure to sufficiently investigate allegations of misconduct of driving under the influence of alcohol;

   (d) the failure to property and sufficiently discipline an officer, even where misconduct is evident;

   (e) the failure to initiate prompt and meaningful disciplinary procedures related to the alleged misconduct, even when the allegation of misconduct is so obviously true;

   (f) investigating complaints of officers differently than complaints against other citizens;

   (g) failing to enforce its own rules codified in the Lake County Sheriff Rules and Regulations;

   (h) failing to properly monitor and/or supervise its police officers;

35. Individually and collectively, the above described *de facto* policies, practices, and/or customs of the Defendant proximately resulted in the culture and endemic attitude among members of the Lake County Sheriff's Office, including but not limited to Officer

Mikulich, that they may engage in misconduct, including but not limited to driving under the influence of alcohol, without fear of official and /or meaningful consequence and consider themselves "above the law" because their fellow officers will cover up for them whenever possible;

36. The aforementioned *defacto* policies, practices and/or customs of the Defendant, individually and collectively, have been maintained and/or implemented with utter indifference by the Defendant and has enabled, encouraged, and/or motivated other officers, including but not limited to Officer Mikulich, to commit the aforesaid wrongful acts against the Plaintiff, and therefore acted as the direct and proximate cause of the injuries sustained by Plaintiff;

37. The above acts and/or omissions of Defendant violated the Plaintiff's substantive due process rights to his bodily integrity under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

WHEREFORE Plaintiff prays Judgment be entered in his favor and against Defendant, THE LAKE COUNTY SHERIFF'S OFFICE, in an amount that is fair and reasonable in the premises in excess of $75,000.00 plus costs, statutory attorney fees, and punitive damages.

## COUNT II

### *NEGLIGENT RETENTION & FAILURE TO PROPERLY SUPERVISE*

38. At all times herein referred, Defendant, LAKE COUNTY SHERIFF's OFFICE (hereinafter referred to as the "Defendant," was and still is a municipal corporation organized and existing under the laws of the State of Indiana;

39. Prior to July 10, 2016, the Defendant employed Police Officer Guy Mikulich with the rank of Lieutenant;

40. Prior to July 10, 2016, Officer Mikulich's superiors were made aware on numerous occasions by instances of misconduct that Officer Mikulich was distraught, psychologically fragile, unfit for office, and was abusing alcohol;

41. Prior to July 10, 2016, Officer Mikulich had a reputation known among his fellow officers, commanders, superiors, and the surrounding law enforcement community as a heavy drinker;

42. Prior to July 10, 2016, Officer Mikulich made his superiors personally aware he was distraught, psychologically fragile, and was unfit for office;

43. On the morning of July 10, 2016, Officer Mikulich made his superiors personally aware that he was distraught, psychologically fragile, and unfit for office;

44. Prior to July 10, 2016, Officer Mikulich, despite his reputation as a heavy drinker, was issued an unmarked 2011 Ford Crown Victoria to operate while on and off duty;

45. On July 9, 2016 and July 10, 2016, Officer Mikulich was assigned to work security at the Gary Air and Water Show;

46. While on duty on July 9th, Officer Mikulich attended a house party with Lake County Sheriff's Commander Sharon Bennett at a home located near Miller Beach where Officer Mikulich drank intoxicating beverages to the point of intoxication;

47. While at the party on July 9th, Officer Mikulich and Commander Bennett were dispatched to a call of a drowning at Miller Beach which he reported to in an intoxicated state;

48. Officer Mikulich was ordered by Commander Bennett to stand down, i.e., not go into the lake to save the drowning victims;
49. During the incident, 2 men drown to death while onlookers ridiculed and harassed Officer Mikulich inferring he was a coward and a "piece of shit" for failing to enter the water to save the drowning victims;
50. In a distraught state, Officer Mikulich self-medicated his grief by continuing to consume large quantities of alcohol while off duty that evening;
51. In a distraught state, Officer Mikulich informed his commanding officer on the morning of July 10, 2016 that he was distraught, had been drinking all evening, and was in no shape to report to duty;
52. Despite informing his commanding officer he was unfit for duty and had been drinking to excess the night before, his commanding officer ordered him to report to work notwithstanding knowledge of his intoxication and fragile emotional state;
53. While on duty on July 10, 2016, Officer Mikulich attended another gathering with Commander Bennett at the same home as the prior day where he again drank to the point of intoxication;
54. When the Air and Water Show ended, Officer Mikulich drove his company issued unmarked police vehicle on his way to assist with traffic control of motorists leaving the Air and Water Show;
55. While intoxicated, Officer Mikulich was proceeding westbound on Oak Avenue at or near its intersection with Pike Street, in the City of Gary, County of Lake, State of Indiana, when he veered off the roadway and struck a parked vehicle and Plaintiff, Derrick Dircks;

56. On and prior to July 10, 2016, it was the duty of the Defendant to properly train, discipline, and supervise its officers including oversight of their mental well being and fitness for duty;

57. Disregarding said duty, Defendants committed one or more of the following wrongful acts:

   (a)   Failed to recognize and / or ignored signs of excessive drinking and obvious intoxication by Officer Mikulich while on duty on July 9th and July 10th;

   (b)   Failed to supervise Officer Mikulich to ensure he was not consuming alcohol and/or becoming intoxicated while on duty on July 10th despite awareness of his drinking problem, his fragile emotional state generally exacerbated by witnessing a drowning death the day before;

   (c)   Ordered Officer Mikulich to work on July 10th despite his request to be taken off assignment due to his intoxication the night before despite awareness of his fragile emotional state generally exacerbated by witnessing a drowning death the day before;

   (d)   Failed to recognize and / or ignored signs of excessive drinking by Officer Mikulich prior to July 9th and July 10th;

   (e)   Failed to recognize and / or ignored signs that Officer Mikulich was not coping psychologically to the stresses endemic with police work and was self-medicating with alcohol;

   (f)   Failed to recognize and /or ignored signs that Officer Mikulich was unfit for duty;

   (g)   Retained Guy Mikulich's employment despite knowing he was psychologically fragile, unfit for duty, and was self-medicating and abusing alcohol;

58. Defendant knew or should have known the obvious consequence of Officer Mikulich's continued employment, failure to properly supervise, and retention of his employment as a police officer would result in injury to those he and the Lake County Sheriff's Office were sworn to protect;

59. As a direct, proximate, and foreseeable result of aforesaid acts and /or omissions, Officer Mikulich drove his company issued vehicle while intoxicated and struck and injured Plaintiff, Derrick Dircks;

WHEREFORE Plaintiff prays Judgment be entered in his favor and against Defendant, THE LAKE COUNTY SHERIFF'S OFFICE, in an amount that is fair and reasonable in the premises in excess of $75,000.00 plus costs, statutory attorney fees, and punitive damages.

s/Robert A. Montgomery
Robert A. Montgomery
Attorney for Plaintiffs

Robert A. Montgomery
Attorney at Law
30 North LaSalle Street, Suite 2950
Chicago, Illinois 60602
T: 312-236-7700; F: 312-346-6549
E-Mail:  rm@rmontlaw.com
Attorney Code: 9327-98

JS 44 (Rev. 07/16) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
DERRICK DIRCKS

**(b)** County of Residence of First Listed Plaintiff    COOK COUNTY, IL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert A. Montgomery
30 North LaSalle Street, Suite 2950
Chicago, Illinois 60602

## DEFENDANTS
THE LAKE COUNTY SHERIFF'S OFFICE, A municipal corporation

County of Residence of First Listed Defendant    LAKE COUNTY, IN
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS - PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**TORTS - PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS - Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Brief description of cause:
42 USC section 1983

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 07/09/2018
SIGNATURE OF ATTORNEY OF RECORD: s/Robert A. Montgomery

**FOR OFFICE USE ONLY**
RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of Indiana ▼

| | |
|---|---|
| DERRICK DIRCKS, )<br>)<br>)<br>)<br>*Plaintiff(s)* )<br>v. )<br>THE LAKE COUNTY SHERIFF'S )<br>OFFICE, A municipal corporation, )<br>)<br>)<br>*Defendant(s)* ) | Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

      Oscar Martinez Jr.
      Lake County Sherriff
      Lake County Sherriff's Office
      2293 N. Main Street
      Crown Point, IN   46307-1854

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

      Robert A. Montgomery
      Attorney at Law
      30 North LaSalle Street, Suite 2950
      Chicago, Illinois 60602
      T: 312-236 7700; F: 312-346-6549
      E-Mail: rm@rmontlaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   07/09/2018

*Signature of Clerk or Deputy Clerk*